UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GERALDINE OSBORN,                                  )
    *Plaintiff*,                                        )
                                                 )
    *vs.*                                           )     1:12-cv-1375-JMS-DML
                                                 )
CAROLYN COLVIN, *Acting Commissioner of*            )
*Social Security Administration*,                   )
    *Defendant.*                                       )

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Geraldine L. Osborn applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") in December 2009, alleging that her disability began on December 1, 2007. [Dkt. 16-2 at 23.] Her application was denied both initially and on reconsideration by the Defendant, Commissioner of the Social Security Administration (the "Commissioner"). [*Id.*] Administrative Law Judge Julia D. Gibbs (the "ALJ") conducted a video hearing on July 21, 2011, and issued a decision on September 2, 2011, finding that Ms. Osborn was not disabled. [*Id.* at 23, 32.] The Appeals Council denied Ms. Osborn's Request for Review on September 4, 2012, [*id.* at 2, 6], making the ALJ's decision final for purposes of judicial review, 20 C.F.R. § 404.981. Ms. Osborn has filed this action under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits. [Dkt. 1.]

### I.
### RELEVANT FACTUAL BACKGROUND

The pertinent background facts were detailed by Ms. Osborn in her opening brief, [dkt. 20 at 1-9], and agreed to by the Commissioner, [dkt. 25 at 2]. Because the facts implicate sensitive and otherwise confidential information concerning Ms. Osborn and it is not necessary to

significantly develop them to resolve the issues presented, the Court will simply incorporate those agreed facts by reference herein.  Specific facts will be articulated as needed.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).  The ALJ is not required to mention every piece of evidence but must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, so that a reviewing court "may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review."  *Craft*, 539 F.3d at 673.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits.  Otherwise the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [she] perform h[er] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).  After Step Three,

but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's

physical and mental abilities considering all of the claimant's impairments.  The ALJ uses the

RFC at Step Four to determine whether the claimant can perform her own past relevant work and

if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. §

416.920(e).

## III.
### PROCEDURAL HISTORY

Using the five-step sequential evaluation process set forth by the SSA, the ALJ made the

following findings and ultimately concluded that Ms. Osborn was not disabled.  [Dkt. 16-2 at

32.]

At step one, the ALJ determined that Ms. Osborn has not engaged in substantial gainful

activity[1] since December 1, 2007, the alleged disability onset date.  [*Id.* at 25.]  The ALJ also de-

termined that Ms. Osborn met the insured status requirements of the SSA through December 31,

2011.  [*Id.*]

At step two, the ALJ found that Ms. Osborn has the following severe impairments[2]: de-

pression, anxiety, migraine headaches, asthma, and degenerative disc disease with mild spondy-

losis.  [*Id.*]  The ALJ found these specific impairments to be severe because they "impose more

than a minimal restriction on the claimant's ability to perform basic work activities."  [*Id.*]

---

[1]  Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a)-(b).

[2] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

At step three, the ALJ considered various listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, but found that neither Ms. Osborn's impairments nor the combination of her impairments met or medically equaled those listings.  [*Id.*]  The ALJ specifically cited listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) in her decision.  [*Id.* at 26.]  The ALJ found that Ms. Osborn had mild restrictions in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. [*Id.*]

After step three but before step four, the ALJ found that Ms. Osborn had the RFC to perform light work, but limited Ms. Osborn to unskilled or semi-skilled work with superficial interaction with the public, co-workers, and supervisors.  [*Id.* at 27, 30.]

At step four, the ALJ found that Ms. Osborn is not able to perform any past relevant work because the requirements of her past employment exceeded her RFC.  [*Id.* at 30-31.]

At step five, and considering Ms. Osborn's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the economy that she can perform.  [*Id.* at 31.]  The ALJ relied on the testimony of the vocational expert to conclude that even with her functional limitations, there is work that exists in significant numbers in the national economy that Ms. Osborn could perform, such as hotel housekeeper, office mail clerk, and office helper.  [*Id.* at 31-32.]  Based on these findings, the ALJ concluded that Ms. Osborn is not disabled.  [*Id.* at 32.]

## IV.
### DISCUSSION

In support of her request for remand, Ms. Osborn presents three issues.  First, she argues that the ALJ never cited the listings she considered when determining that the claimant's physical impairments do not meet or equal a listing.  [Dkt. 20 at 13.]  Second, Ms. Osborn contends

that the ALJ ignored her evidence of urinary incontinence.  [*Id.* at 13-15.]  Third, Ms. Osborn

argues that although the ALJ classified her asthma as a severe impairment, the ALJ did not con-

sider accompanying environmental limitations provided by the State agency physicians.  [*Id.* at

15-16.]  The Court will address each of these arguments in turn.

### A.   Failure to Cite Any Physical Impairment Listings

Ms. Osborn argues that the ALJ committed reversible error by not citing any listings she

considered regarding Ms. Osborn's physical impairments.  [Dkt. 20 at 12-13.]  She acknowledg-

es that the ALJ analyzed listings 12.04 and 12.06 in light of of Ms. Osborn's mental impair-

ments, but she contends that the ALJ should have also discussed listings regarding Ms. Osborn's

physical impairments.  [*Id.*]

The Commissioner argues that the ALJ provided more than a perfunctory analysis regard-

ing the non-disabling state of Ms. Osborn's physical impairments later in her opinion; thus, the

Commissioner contends that it was not error for her not to cite any physical impairment listings

at step three.  [Dkt. 25 at 4-6.]

Ms. Osborn has the burden of proving that her condition meets or equals each criterion of

a listed impairment.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *see also Knox v.*

*Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (holding that before an ALJ provides a step-

three analysis, "a claimant first has the burden to present medical findings that match or equal in

severity all the criteria specified by a listing").  That said, an ALJ should mention the specific

listings she is considering and "h[er] failure to do so, if combined with a 'perfunctory analysis,'

may require a remand."  *Ribaudo*, 458 F.3d at 583 (collecting cases).

Ms. Osborn does not dispute that no treating or examining physicians opined that she met

or medically equaled a listing.  Ms. Osborn does not specifically identify any listings that she

believes the ALJ should have considered regarding her physical impairments. She also fails to point to any evidence she presented to support these unidentified listings. It was Ms. Osborn's burden to present medical findings that match or equal in severity all the criteria specified by a listing. *Ribaudo*, 458 F.3d at 583; *Knox*, 327 Fed. Appx. at 655. Thus, the Court cannot conclude that the ALJ erred in this respect.

Moreover, the Court agrees with the Commissioner that the ALJ's overall analysis of Ms. Osborn's physical impairments was more than perfunctory. [Dkt. 25 at 5-7.] The ALJ noted that although Ms. Osborn alleges an onset date of December 2007, that date corresponds with Ms. Osborn losing her job because the store where she worked was closing, and that she had received little treatment before then. [Dkt. 16-2 at 28.] Even after that date, the ALJ noted that Ms. Osborn received no significant treatment for her physical impairments or symptoms until May 2009. [*Id.* at 29.] Ms. Osborn's main physical impairment is her neck, [dkt. 16-2 at 56], but she underwent an MRI in 2009 and her treating physician characterized the results as normal, [*id.* at 56-57; dkt. 16-7 at 50-51]. The ALJ noted that Ms. Osborn's physical complaints varied at her visits and included incontinence, migraines, and joint pain but that she did not receive significant treatment for any of those impairments. [Dkt. 16-2 at 29.] Because the ALJ provided more than a perfunctory analysis of Ms. Osborn's physical impairments in rejecting her disability claim, she did not err by not addressing any physical impairment listings. *See Ribaudo*, 458 F.3d at 583 (holding that an ALJ's failure to mention the specific listings she is considering "*if combined with* a 'perfunctory analysis,' may require a remand"). Thus, the Court rejects Ms. Osborn's first argument.

## B.  Urinary Incontinence

Ms. Osborn argues that the ALJ ignored evidence about her urinary incontinence, which she detailed at the hearing.  [Dkt. 20 at 13.]  She contends that her incontinence caused functional limitations; thus, the ALJ committed reversible error.  [*Id*. at 13-15.]

The Commissioner contends that the ALJ did consider Ms. Osborn's complaints of incontinence but concluded that she did not receive significant treatment for that condition.  [Dkt. 25 at 6-7.]  The Commissioner further emphasizes that no provider opined that Ms. Osborn's incontinence caused functional limitations and that just because a claimant is diagnosed with a condition does not mean that the condition is disabling.  [*Id.* at 7.]

"It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."  *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c)).  It is not enough for a claimant to show that she received a diagnosis during the relevant time period because not every diagnosis is disabling.  *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998).  In rendering a decision, the ALJ must build a logical bridge from the evidence to her conclusion.  *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).  "The ALJ need not, however, provide a complete written evaluation of every piece of testimony and evidence."  *Id.*

The ALJ acknowledged that Ms. Osborn complained of incontinence while seeking routine treatment from her doctors.  [Dkt. 16-2 at 29.]  The ALJ concluded, however, that the medical records did not reflect any significant treatment.  [*Id.*]  Ms. Osborn argues that the ALJ should have detailed the treatment she received for her incontinence, but she ignores that she testified at the hearing that her incontinence was probably from stress.  [Dkt. 16-2 at 53.]  Ms. Os-

born does not challenge the ALJ's extensive analysis of the evidence surrounding her mental impairments, including anxiety.  [*Id.* at 26-27.]

Additionally, the medical records show that although Ms. Osborn complained of incontinence in March 2010, [dkt. 16-9 at 116], her complaints changed at each doctor's visit and she was not prescribed anything for incontinence until September 2011, [*see* dkt. 16-10 at 4 (starting medication for incontinence)].  Ms. Osborn testified regarding work-related limitations that she believes her incontinence would cause, [dkts. 16-2 at 52-52; 20 at 13-14], but no physician's opinion supports those purported limitations.  Moreover, Ms. Osborn does not challenge the ALJ's adverse credibility finding regarding her complaints.  [Dkt. 16-2 at 28.]  For these reasons, the Court rejects Ms. Osborn's argument that the ALJ ignored her incontinence diagnosis.

**C.  Asthma**

Ms. Osborn argues that the ALJ ignored evidence of her asthma.  [Dkt. 20 at 15-16.]  She presents two arguments, but both hinge on whether the ALJ erred by not explaining why she did not account for environmental limitations related to Ms. Osborn's asthma in the RFC.[3]  [*Id.*]  Specifically, Ms. Osborn contends that the ALJ erred by failing to mention that the State agency consultants found that she should avoid concentrated exposure to environmental limitations, such as humidity, fumes, odors, dusts, gases, and poor ventilation.  [*Id.*]

In response, the Commissioner argues that even if the ALJ erred by not explaining why she did not adopt the environmental limitations in the state agency consultants' reports, any error

---

[3] Ms. Osborn's related argument is that the ALJ erred by failing to mention that Ms. Osborn tested positive to various irritants on allergy tests, which led to a diagnosis of co-existing rhinitis and allergic asthma.  [*Id.* at 16.]  As an initial matter, the ALJ did acknowledge the evidence of Ms. Osborn's allergy testing but concluded that the medical records did not reflect any significant treatment.  [Dkt. 16-2 at 29.]  Even if the ALJ should have detailed that evidence further, Ms. Osborn does not identify any functional limitations from her allergies other than the environmental limitations related to her asthma, so that argument merges with her primary argument regarding the ALJ's failure to account for environmental limitations.

is harmless.  [Dkt. 25 at 10-11.]  The Commissioner points out that the vocational expert identified two jobs that would not require concentrated exposure to environmental limitations, and the Social Security Regulations recognize that environmental limitations would have a minimal impact on available jobs.  [*Id.*]

Social Security Regulation 85-15 provides, in relevant part, that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."  The doctrine of harmless error is fully applicable to judicial review of administrative decisions.  *Keys v. Barnhart,* 347 F.3d 990, 994 (7th Cir. 2003).  An ALJ's failure to include a restriction for environmental limitations is harmless error if identified jobs do not have environmental factors.  *See Smith v. Astrue*, 2011 WL 3922465 at *5 (N.D. Ind. 2011).

The State agency physicians opined that Ms. Osborn should avoid concentrated exposure to environmental limitations such as humidity, fumes, odors, dusts, gases, and poor ventilation.  [Dkts. 16-8 at 87; 16-9 at 125-130.]  Ms. Osborn acknowledges that the ALJ gave those physicians' opinions limited weight because they opined that she could perform medium work and the ALJ believed that the evidence limited Ms. Osborn to light work.  [Dkts. 16-2 at 29; 20 at 15.]  Ms. Osborn contends, however, that the ALJ still should have credited the environmental limitations those physicians proposed.  [Dkt. 20 at 15-16.]  Even assuming it was error for the ALJ not to expressly account for the proposed environmental limitations, that error was harmless.  As the Commissioner points out, the vocational expert who testified at the hearing identified two light, unskilled office jobs that would not require concentrated exposure to the environmental limitations the State agency physicians identified.  [Dkt. 16-2 at 61 (identifying office mail clerk and office helper as light, unskilled jobs Ms. Osborn could perform)]; *see also* DICOT 209.687-026

(Mail Clerk position listing no exposure to humidity or other environmental conditions); DICOT 239.567-010 (Office Helper position listing no exposure to humidity or other environmental conditions).  The ALJ identified those positions in her opinion concluding that Ms. Osborn was not disabled.  [Dkt. 16-2 at 31.]

The Court has great confidence that even if it were to remand Ms. Osborn's case so that the ALJ could include the environmental limitations proposed by the State agency physicians in Ms. Osborn's RFC, the ALJ would reach the same conclusion that Ms. Osborn is not disabled. The Court's confidence is based on the vocational expert's testimony, which the ALJ adopted, identifying two light, unskilled jobs suitable for Ms. Osborn that contain the necessary environ-mental limitations.  Such determination is further bolstered by SSR 85-15, which acknowledges that "the impact on the broad world of work would be minimal" when the restriction is to avoid excessive amounts of environmental limitations because "most job environments do not involve great noise, amounts of dust, etc."  Thus, the Court concludes that any error on this point is harmless.  *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (reiterating that error in the so-cial security context is harmless when it would be a waste of time to remand because it is pre-dictable with great confidence that the ALJ would reinstate her decision on remand if the error was accounted for).

## V.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010).  Furthermore, the standard of review of the Commissioner's denial of

benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Ms. Os-

born to overturn the Commissioner's decision that Ms. Osborn is not disabled. Therefore, the

decision below is **AFFIRMED**. Final judgment will be entered accordingly.


09/18/2013


Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Charles Julian Myers
cmyers7943@sbcglobal.net